1
2
3
4
5

# UNITED STATES DISTRICT COURT

6

## EASTERN DISTRICT OF CALIFORNIA

7
8

9
PATRICIA FRANCO, et al.,                                    CASE NO. 1:10-cv-02354-SKO

                              Plaintiffs,                   **ORDER GRANTING FINAL**
10                                                          **APPROVAL OF CLASS ACTION**
        v.                                                  **SETTLEMENT**
11
                                                            (Docket No. 38)
12
RUIZ FOOD PRODUCTS, INC.,

13

                              Defendant.
14

15   _____/

16                          **I.  INTRODUCTION**

17        On July 5, 2012, Plaintiffs Patricia Franco ("Franco") and Lilia Castro ("Castro," collectively

18   "Plaintiffs") filed a motion requesting final approval of a class action settlement, including an award

19   of attorneys' fees and costs and enhancement awards for the named Plaintiffs as Class

20   Representatives. (Doc. 38.)  No opposition to the motion was filed, and no objection was submitted

21   by any member of the class ("Class Member").  The matter was initially heard by the Court on

22   August 1, 2012.  Mr. Philip Downey, Esq., of The Downey Law Firm, LLC,  and Ms. Rose Luzon,

23   Esq., of Shepherd Finkelman Miller & Shah, LLP, appeared on behalf of Plaintiffs, and Mr. Mitchell

24   Boomer, Esq., and Ms. Cynthia Sandoval, Esq., of Jackson Lewis LLP appeared on behalf of

25   Defendant Ruiz Food Products, Inc. ("Defendant").  No Class Member appeared at the hearing.  The

26   Court ordered Plaintiffs to provide supplemental information, which was filed on October 15, 2012.

27   (Docs. 41, 51.)  A second hearing concerning Plaintiffs' motion was held on November 14, 2012,

28   during which Ms. Luzon and Mr. Boomer appeared; no Class Member was present.

For the reasons set forth below, the Court GRANTS FINAL APPROVAL of the parties' class action settlement, (2) GRANTS an award of attorneys' fees and costs, and (3) GRANTS enhancement awards to Plaintiffs as Class Representatives.[1]

## II.   BACKGROUND

On December 15, 2010, Plaintiffs filed a putative collective class action complaint against Defendant pursuant to the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and Rule 23 of the Federal Rules of Civil Procedure for violations of California Labor Code and Wage Orders and California Business and Professions Code § 17200, *et seq*.  Plaintiffs' operative pleading, the First Amended Complaint, was filed on May 4, 2011, and alleges claims for (1) violation of the FLSA; (2) violation of the California Labor Code – failure to compensate for all hours worked; (3) violation of the California Labor Code – failure to pay overtime; (4) violation of the California Labor Code – failure to provide meal and rest periods; (5) unpaid wages and waiting time penalties; (6) failure to properly itemize pay stubs; and (7) violation of California Business & Professions Code § 17200, *et seq*.

On September 28, 2011, the parties mediated their dispute with Michael J. Loeb, Esq., and after an all-day mediation, the parties reached a class-wide settlement.  (Doc. 29, Young Decl. in Support of Preliminary Approval, ¶ 7.)  The parties memorialized the terms of their proposed settlement in a "Joint Stipulation of Settlement and Release Between Plaintiffs and Defendant" ("Settlement Agreement") (Doc. 29-1), and on December 22, 2011, filed a request for preliminary approval of the class settlement.  (Docs. 27-30.)  On February 10, 2012, the Court granted preliminary approval of the settlement, authorized the notice process, and scheduled a hearing to consider final approval of the settlement.  (Doc. 35.)

On July 5, 2012, Plaintiffs filed a Motion for Final Approval of Class Action Settlement, including a request for attorneys' fees and costs and a request for an enhancement award for the named Plaintiffs.  (Doc. 38.)  No opposition was filed.  A hearing was held on August 1, 2012, and the Court issued an order requiring Plaintiffs to submit supplemental information in support of the

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge assigned to the case. (Docs. 47, 48.)

motion. (Doc. 41.) Additionally, the Court was notified by Defendant that, on August 7, 2012, Defendant served notice of the proposed settlement on the appropriate Offices of the Attorney General pursuant to 28 U.S.C. § 1715. (*See* Docs. 42-44.) On October 15, 2012, Plaintiffs filed a Supplemental Submission Regarding Plaintiffs' Motion for Final Approval of Class Action Settlement pursuant to the Court's August 1, 2012, Order. (Doc. 51.) A second hearing was held on November 14, 2012, and Plaintiffs' motion was submitted for decision. (Doc. 52.)

### III.    THE PARTIES' SETTLEMENT

On October 19, 2011, Plaintiffs filed a Notice of Settlement and on December 22, 2011, filed a request for preliminary approval of the class-action settlement, indicating that the parties had negotiated a resolution of their dispute. (Docs. 25, 27-30.) The terms of the parties' Settlement Agreement is summarized below.

### A.    The Composition of the Settlement Class

The Settlement Agreement provides for the certification, for settlement purposes only, of a class comprised of all persons currently or formerly employed as non-exempt production line employees at the Ruiz Food processing facility in Dinuba, California, between December 15, 2006, and the date of the preliminary approval of the Settlement Agreement (approved by the Court on February 10, 2012 (Doc. 35)) (the "Settlement Class"). (Doc.29-1, Settlement Agreement, ¶¶ 6-7.)

### B.    The Material Terms of the Settlement Agreement

#### 1.    The Class Settlement Amount

Plaintiffs and Defendant have agreed to settle the underlying class claims in exchange for a Class Settlement (the "Settlement") in the maximum amount of $2,500,000 (the "Settlement Amount"). All amounts paid to the Class Members, all attorneys' fees, costs, enhancement awards for the Class Representatives, fees and expenses for the Settlement Administrator, and any other payments provided by the Settlement Agreement shall be paid out of the Settlement Amount. The net settlement amount shall be calculated by deducting from the Settlement Amount all attorneys' fees and costs, the enhancement awards for the Class Representatives, a payment to the State of California pursuant to the California Private General Attorney Act ("PAGA"), codified at California Labor Code § 2699, *et seq.*, in the amount of $10,000, and the actual fees and expenses of the

3

Settlement Administrator (the "Net Settlement Amount").  The entire Net Settlement Amount shall be paid to the Class Members as Settlement Awards ("Settlement Awards").  To the extent any funds remain after satisfying all payments to Class Members, such funds will be paid to the *cy pres* beneficiaries: Ruiz 4 Kids (50%) and Chicana Latina Foundation (50%).  No portion of the Net Settlement Amount will revert to Defendant or be refunded.  Defendant shall be responsible to pay separately the employer payroll taxes related to the Settlement Agreement.  (Doc. 29-1, Settlement Agreement, ¶ 14(c).)

### 2.    Settlement Awards

Settlement Awards will be distributed as follows: (1) Class Members whose Notice of Settlement ("Notice") is returned as undeliverable with no forwarding address will be excluded from the Settlement Class, will not be bound by the Settlement, will be deemed to have "opted out" from Class membership, and will not receive any Settlement Awards; (2) Settlement Awards will be calculated according to the number of weeks worked by a Class Member, each to receive a share of the Net Settlement Amount in proportion to the number of weeks he or she worked during the class period compared to the number of weeks worked by other Class Members.  (Doc. 29-1, Settlement Agreement, ¶ 14(d).)

### 3.    The Labor Workforce and Development Agency Payment

In satisfaction of the claims arising under the PAGA, the parties have agreed that Defendant will pay $10,000 – 75% ($7,500) of which will be paid to the California Labor and Workforce Development Agency and the balance ($2,500) will become part of the Net Settlement Amount. (Doc. 29-1, Settlement Agreement, ¶ 14(e).)

### 4.    Claims Administration Costs

The parties have agreed that the Heffler, Radetich & Saitta LLP, the Settlement Administrator, will be paid costs not to exceed $30,000 associated with the administration of this Settlement. (Doc. 29-1, Settlement Agreement, ¶ 14(j), ¶ 15; *see also* Doc. 38-1, 7:24-26; Doc. 38-3 (Hamer Decl.), ¶ 14.)

5.      **Class Counsel Award of Attorneys' Fees and Costs** [2]

The parties have agreed that Class Counsel shall be awarded $825,000 in attorneys' fees and $30,000 in costs.  (Doc. 29-1, Settlement Agreement, ¶ 16.)

6.      **Class Representative Enhancement Awards**

The parties have agreed that Class Representatives Franco and Castro will each be paid $7,000 as Class Representative Enhancement Awards.  (Doc. 29-1, Settlement Agreement, ¶ 14(I), ¶ 15, *see also* Doc. 38-1, 7:19-21.)

**C.**      **The Scope of the Release in the Settlement Agreement**

The parties' Settlement Agreement sets forth the following release by the Class Members:

> 19.  Upon final approval by the Court of this Stipulation of Settlement, and except as to such rights or claims as may be created by this Stipulation of Settlement, each Class Member fully releases and discharges Defendant, its present and former parent companies, subsidiaries, related or affiliated companies, shareholders, owners, officers, directors, employees, agents, attorneys, insurers, successors and assigns, and any individual or entity which could be jointly liable with Defendant ("Released Parties"), from any and all claims, debts, liabilities, demand, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action, known or unknown, of any nature under state, federal or local law arising out of Plaintiffs' causes of action for alleged: (1) Violation of the Fair Labor Standards Act, 29 USC § 201, *et seq*.; (2) Violation of the California Labor Code Failure to Compensate For All Hours Worked, California Labor Code §§ 201-204, *et seq*.; (3) Violation of the California Labor Code Failure to Pay Over Time Wages; (4) Violation of the California Labor Code Failure to Provide Meal and Rest Breaks (Cal. Lab. Code § 226.7 *et seq*., Cal Lab. Code § 512 and California Industrial Welfare Commission Wage Order(s); (5) Unpaid Wages and Waiting Time Penalties; (6) Failure to Properly Itemize Pay Stubs (Cal. Lab. Code §§ 226(a) and 226(e); and, (7) Violation of California's Business and Professions Code §§ 17200, *et seq*., and any other claims whatsoever alleged in this Action, including, without limitation, all claims for unpaid wages and overtime, unpaid minimum wages, failure to pay wages timely, during employment and at the termination of employment, failure to maintain payroll records as required by law, class claims, collective claims, representative claims, restitution, injunctive relief, declaratory relief and other equitable relief, liquidated damages, waiting-time penalties, penalties of any nature, unfair competition, unlawful business practices, unfair business practices, fraudulent business practices, other compensation or benefits including 401K benefits or matching benefits, retirement or deferred compensation benefits claimed on account of alleged unpaid wages, interest, attorneys' fees and costs, from December 15, 2006, through and including the date of final approval of the Settlement, along with Plaintiffs' prayer for damages including unpaid wages and overtime wages, prejudgment interest on unpaid wages and overtime wages, penalties (including, but not limited to penalties under the California Private Attorney's General Act), liquidated damages, restitution,

---

[2] On February 10, 2012, the Court appointed Egan Young, Attorneys at Law; Shepherd, Finkelman, Miller & Shah, LLP; and The Downey Law Firm as Class Counsel ("Class Counsel") and appointed the named Plaintiffs as Class Representatives.  (Doc. 35.)

injunctive relief, post judgment interest, attorneys' fees and costs ("Released Claims"). The Released Claims do not include workers' compensation claims or any claims arising out of the employment relationship that are not enumerated as Released Claims, such as wrongful termination, discrimination, harassment, or retaliation. By and through this Settlement, each Class Member forever agrees he/she shall not be entitled to pursue, accept or recover damages for any Released Claims against the Released Parties from December 15, 2006 through and including the date of final approval of the Settlement.

(Doc. 29-1, Settlement Agreement, ¶ 19.)

**D.     Notice to the Class Members**

The procedures for giving notice to the Class Members, as set forth in the parties' Settlement Agreement (*see* Doc. 29-1, Settlement Agreement, ¶ 17) and ordered in the Court's Preliminary Approval Order (Doc. 35), have been carried out by the Settlement Administrator, Heffler Claims Administration, a division of Heffler, Radetich & Saitta, LLP, Certified Public Accountants ("Heffler"). (Doc. 38-3, Hamer Decl.) On March 7, 2012, Heffler received the Notice, which was approved by the parties prior to mailing. (Doc. 38-3, Hamer Decl., ¶¶ 6-7.) The Notice summarized the Settlement Agreement's principal terms, provided Class Members with an estimate of how much they would be paid if the Settlement Agreement received final approval, and advised Class Members how to submit claims for payment, opt out of the Settlement, or object to the Settlement. (*See* Doc. 29-2.) The Notice was approved by the Court in its February 10, 2012, Preliminary Approval Order. (Doc. 35.)

On March 7, 2012, counsel for Defendant provided Heffler with a list ("Class List") of all Class Members' names, their last known mailing addresses and telephone numbers, Social Security Numbers, and other information necessary to calculate estimated Settlement payments. (Doc. 38-3, Hamer Decl., ¶ 7.) The Class List contained data for 2,055 potential Class Members. (Doc. 38-3, Hamer Decl., ¶ 7.)

On March 28, 2012, Notices were mailed to 2,055 Class Members contained in the Class List via first class mail. (Doc. 38-3, Hamer Decl., ¶ 9.) The Notice advised Class Members that they could submit a Request for Exclusion or a Dispute to be post-marked by May 14, 2012. (Doc. 38-3, Hamer Decl., ¶ 9.) Heffler received 119 undeliverable Notices, five of which were returned with forwarding addresses and were promptly re-mailed. (Doc. 38-3, Hamer Decl., ¶ 10.) Of the

remaining 114 Notices, Heffler performed address traces on each of them and the Notices were re-mailed. (Doc. 38-3, Hamer Decl., ¶ 10.)  Of the total 114 Notices mailed to the traced addresses, a total of 17 were returned as undeliverable a second time and no further processing was performed. (Doc. 38-3, Hamer Decl., ¶ 10.)

No Class Members wrote to dispute the number of weeks he or she worked or the approximate total Settlement Award. (Doc. 38-3, Hamer Decl., ¶ 11.) Heffler received two Opt-Out requests, and no Objections to the Settlement were received.  (Doc. 38-3, Hamer Decl., ¶¶ 12-13.) At the August 1, 2012, and November 14, 2012, hearings on this motion, counsel for both parties stated that the information provided by Heffler was current and had not changed.

## IV.   DISCUSSION

### A.   Final Approval of the Class-Action Settlement is Granted

#### 1.   The Rule 23(a) Class-Certification Requirements Are Satisfied

Federal Rule of Civil Procedure 23(e) requires court approval of class action settlements. "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  In confirming the propriety of class certification, courts assess the following prerequisites pursuant to Rule 23(a): "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)).

#### a.   Numerosity

Numerosity requires that the class be so numerous that the joinder of individual class members would be impracticable.  Fed. R. Civ. P. 23(a)(1).  Across the Settlement Class, 2,055 Class Members were ultimately identified.  The number of Class Members in this case indicates that the numerosity factor has been satisfied.  *See, e.g., Jordan v. L.A. Cnty.*, 669 F.2d 1311, 1319 (9th Cir. 1982) (indicating that class sizes of 39, 64, and 74 are sufficient to satisfy the numerosity requirement), *vacated on other grounds*, 459 U.S. 810 (1982).

### b.   Commonality

Rule 23(a) also requires "questions of law or fact common to the class."  Commonality exists when there is either a common legal issue stemming from divergent factual predicates or a common nucleus of facts resulting in divergent legal theories. *Hanlon v. Chrysler Corp.* ("*Chrysler Corp.*"), 150 F.3d 1011, 1019 (9th Cir. 1998).  In other words, commonality is generally satisfied where, as in this case, "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005).  As clarified in *Wal-Mart Stores, Inc. v. Dukes* ("*Dukes*"), a plaintiff must demonstrate that the class members "have suffered the same injury" and that their claims "depend upon a common contention . . . of such a nature that is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  __ U.S. __, 131 S. Ct. 2541, 2551 (2011) (internal citation omitted).

The Class Members' claims arising from Defendant's alleged uniform employment policies asserted here differ from those found insufficient to establish commonality in *Dukes*, 131 S. Ct. at 2554.  In *Dukes*, the purported commonality was a lack of common control over a business practice. *Id*. at 2554-55.  The Supreme Court determined that  the "only corporate policy that the plaintiffs' evidence convincingly establishes is Wal-Mart's 'policy' of *allowing discretion* by local supervisors over employment matters." *Id*. at 2554.  The Court noted that, "[o]n its face, of course that is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy *against having* uniform employment practices." *Id.*  The Court concluded that there was no specific employment practice that tied all of the putative class members together and that "[m]erely showing that Wal-Mart's policy of discretion has produced an overall sex-based disparity does not suffice." *Id.* at 2556.

Here, there is no evidence before the Court that the pay practices alleged to violate the FLSA and the California Labor Code were applied inconsistently, such that the complained-of employment practices do not "touch and concern all members of the class." *Id.* at 2557 n. 10 (internal citations omitted).

The parties have agreed for purposes of settlement only that the Class Members share common questions of law and fact as to whether Defendant violated the FLSA and multiple California Labor Code provisions, including, but not limited to, the requirement to pay overtime and to provide meal and rest periods, proper wage statements, and payment of all wages upon termination. These common questions of law or fact are sufficient to satisfy the commonality requirement.

### c.   Typicality

Typicality exists when "the claims or defenses of the representative are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality . . . is said . . . to be satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868. Under the Rule's "permissive standards," representative claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Chrysler Corp.*, 150 F.3d at 1020.

Plaintiffs' claims are "co-extensive" with the other Class Members, as Plaintiffs and the absent Class Members were all Defendant's employees who were paid under the same pay practices and worked under the same company-wide employment policies. The typicality requirement is satisfied.

### d.   Adequacy of Representation

The final Rule 23(a) prerequisite, adequacy of representation, is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The satisfaction of constitutional due process concerns requires that absent class members be afforded adequate representation prior to an entry of judgment, which binds them. *Chrysler Corp.*, 150 F.3d at 1020. Determining the adequacy of representation requires consideration of two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*

The adequacy-of-representation requirement is met here because Plaintiffs have the same interests as the absent Class Members, e.g., obtaining payment for wages unlawfully withheld. Further, there is no apparent conflict of interest between the named Plaintiffs' claims and those of the other Class Members, particularly because the named Plaintiffs have no separate and individual claims apart from the Class.

Moreover, here there are no allocation dilemmas among the Settlement Class similar to those observed as issues in *Amchen Products, Inc. v. Windsor*, 521 U.S. 591 (1997). In *Amchen*, the settlement agreement eliminated all present and future claims against asbestos manufacturers, and the class counsel was attempting to represent both groups of plaintiffs, i.e., those who had present claims and those who had future claims. The conflict between the two groups of plaintiffs was that "the present plaintiffs had a clear interest in a settlement that maximized current funds, while future plaintiffs had a strong interest in preserving funds for their future needs and protecting the total fund against inflation." *Chrysler Corp.*, 150 F.3d at 1020-21 (discussing *Amchen*, 521 U.S. 591 (1997)). Here, the case does not involve sub-classes or classes with diverging interests with respect to allocation of the settlement funds in the same manner as *Amchen*. The Court does not perceive any conflicts of interest between Plaintiffs, Class Counsel, and other Class Members.

In considering the adequacy requirement, the Court also evaluates whether Plaintiffs and Class Counsel will pursue the Class' claims with vigor. The Ninth Circuit has held that, "[a]lthough there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." *Chrysler Corp.*, 150 F.3d at 1021. There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent counsel who have litigated numerous class action cases, including 24 wage and hour and other employment law class actions. (Supp. Submission., Doc. 51, 3:22-5:18.) Further, this is not a case where the Class Members receive no monetary distribution while the Class Counsel are rewarded amply. *Chrysler Corp.*, 150 F.3d at 1021.

The apparent rationale to settle this case was supported, in part, by the impossibility of predicting any litigation result with certainty and by the pendency of *Brinker Restaurant Corp. v.*

1  *Superior Court*, 165 Cal. App. 4th 25 (2008), *aff'd in part,* 53 Cal. 4th 1004 (2012) ("*Brinker*")

2  before the California Supreme Court at the time the matter was settled.  (Doc. 38-1, 20:2-19.)

3  California law, as it related to certain Class' claims, was in potential flux, and settlement, rather than

4  continued litigation, was perceived as more beneficial to the Class Members.  *Brinker* was pending

5  during most of the instant litigation and during the time the parties entered into their Settlement

6  Agreement; the parties mediated the issues in this action and reached a settlement on September 28,

7  2011, whereas *Brinker* was decided on April 12, 2012.  (*See* Doc. 29, Young Decl. in Support of

8  Preliminary Approval, ¶ 7; *Brinker*, 53 Cal. 4th at 1004 .)  In other words, it appears that the

9  settlement was reached for strategic reasons that benefitted the Class, rather than Class Counsel's

10  inability or unwillingness to pursue further litigation.  *See Chrysler Corp.,* 150 F.3d at 1021 (class

11  counsel inadequate by definition where counsel demonstrates an inability or unwillingness to try the

12  case).  In sum, the Court finds that the adequacy factor is satisfied.

13          **e.    Conclusion**

14          As initially determined in the Court's preliminary approval order (Doc. 35) and as set forth

15  above, the Rule 23(a) requirements for class certification have been satisfied.

16          **2.    The Rule 23(b)(3) Requirements are Satisfied**

17          In addition to meeting the requirements of Rule 23(a), to be certified, a class must also meet

18  at least one of the requirements of Rule 23(b).  Plaintiffs assert that class resolution is superior to

19  other available methods for the fair and efficient adjudication of the controversy and the

20  requirements of Rule 23(b) are met.  (Doc. 38-1, 16:15-17:24.)  Pursuant to Rule 23(b)(3), a class

21  action may be maintained if:

22          (3)    the court finds that the questions of law or fact common to class members
                 predominate over any questions affecting only individual members, and that
23               a class action is superior to other available methods of fairly and efficiently
                 adjudicating the controversy. The matters pertinent to these findings include:

24

25                 (A)    the class members' interests in individually controlling the
                        prosecution or defense of separate actions;

26                 (B)    the extent and nature of any litigation concerning the controversy
                        already begun by or against class members;

27

28                 (C)    the desirability or undesirability of concentrating the litigation of the
                        claims in the particular forum; and

11

1    (D)    the likely difficulties in managing a class action.

2  Certification under Rule 23(b)(3) is appropriate whenever the interests of the parties can be served

3  best by settling their differences in a single action. Courts refer to the requirements of Rule 23(b)(3)

4  as its "predominance" and "superiority" requirements. *Amchen*, 521 U.S. at 615.

5    **a.    Predominance**

6    As the Rule 23(a)(3) analysis already considers the issue of commonality, the focus of the

7  Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues.

8  *Chrysler Corp.*, 150 F. 3d at 1022.  In other words, "[t]he Rule 23(b)(3) predominance inquiry tests

9  whether proposed classes are sufficiently cohesive to warrant adjudication by representation."

10  *Amchen*, 521 U.S. at 623. The "main concern in the predominance inquiry . . . [is] the balance

11  between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*,

12  571 F.3d 953, 959 (9th Cir. 2009).  "Implicit in the satisfaction of the predominance test is the notion

13  that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix

14  Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (citation omitted), *amended*, 273 F.3d 1266

15  (9th Cir. 2001).

16    The parties' Settlement Agreement sufficiently demonstrates that "[a] common nucleus of

17  facts and potential legal remedies dominates this litigation." *Chrylser Corp.*, 150 F.3d at 1022.  If

18  individual Class Members were to sue individually, members of the same proposed settlement class

19  would bring essentially the same claims against Defendant.   The central issues raised by the

20  complaint concern policies and practices of Defendant which apply broadly to all the employees in

21  the proposed settlement class.  Similar to *Wright v. Linkus Enterp., Inc.*, 259 F.R.D. 468 (E.D. Cal.

22  2009), this case derives from policies that allegedly required Class Members to work, for example,

23  without compensation for meal and rest periods.   The alleged company-wide and uniform

24  employment policies comprise a common nucleus of facts for employees in the settlement class.

25  *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008) (class certification is usually

26  appropriate where "liability turns on an employer's uniform policy that is uniformly implemented,

27  since in that situation predominance is easily established"); *see also Perez v. Safety-Kleen Sys., Inc.*,

28  253 F.R.D. 508, 520 (N.D. Cal. 2008) (common issues predominate meal break claims and claims

for failure to provide itemized wage statements because these were class-wide policies, and litigation of these claims involve class-wide proof rather than individualized inquiry).  Moreover, the alleged violations of state law entitle the Class Members to the same legal remedies.

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Chrysler Corp.*, 150 F.3d at 1022 (citations omitted).  Thus, despite minor factual differences among Class Members, such as the number of hours or weeks worked, common issues predominate.

### b.    Superiority

In addition to the predominance requirement, Rule 23(b)(3) provides a non-exhaustive list of matters relevant to the Court's determination that class action treatment is superior to other methods of adjudication.  Rule 23(b)(3)(A)-(D).  The first factor considers the interest of each member in "individually controlling the prosecution or defense of separate actions."  Rule 23(b)(3)(A).  This factor weighs against class certification where each class member has suffered sizeable damages or has an emotional stake in the litigation.  *See, e.g., In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 856 (9th Cir. 1982), *abrogated on other grounds in Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996).  In this case, where monetary damages that each Class Member suffered individually are relatively modest, certifying a class action is favored.  *Id.*

The second factor to consider is "the extent and nature of any litigation concerning the controversy already begun by or against members of the class."  Fed. R. Civ. P. 23(b)(3)(B).  The only known litigation concerning the controversy is the instant case, and thus this factor favors certification.

The third Rule 23(b)(3) factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum" (Fed. R. Civ. P. 23(b)(3)(C)), and the fourth factor is "the likely difficulties in managing a class action" (Fed. R. Civ. P. 23(b)(3)(D)).  The fourth factor "encompasses the whole range of practical problems that may render the class format inappropriate for a particular suit."  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 164 (1974).  In the context of

settlement, however, the third and fourth factors are rendered moot and are irrelevant.  *See Amchem*, 521 U.S. at 620 (where a district court is confronted with a settlement-only class certification, the court need not inquire whether the case, if tried, would present manageability problems because the point is that there will be no trial).

"Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be the superior method for managing litigation if no realistic alternative exists."  *Valentino*, 97 F.3d at 1234.  The potential recovery by any individual plaintiff is relatively small and thus individual members of the class would likely be unwilling or unable to institute separate suits.  Further, the filing of individual suits by 2,055 separate plaintiffs would create an unnecessary burden on judicial resources.

In sum, the Rule 23(b)(3) predominance and superiority requirements are satisfied.

### c.    Conclusion

For the reasons set forth above, the Settlement Class meets the class-certification requirements of Rules 23(a) and 23(b)(3).

### 3.    The Proposed Settlement is Fair, Reasonable, and Adequate

Settlements are afforded a presumption of fairness if (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.  4 William B. Rubenstein, Alba Conte, & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. West 2012).  Here, the parties' settlement was reached through the efforts of experienced counsel following mediation with a mediator who has experience handling wage and hour class action disputes.  Further, there was sufficient discovery conducted by experienced Class Counsel, and there were no objections and only two requests for exclusion to the settlement.  The settlement is thus entitled to a presumption of fairness.

A settlement may be approved only after a hearing and on finding that it is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(1)(c).  Such approval is required to ensure that any settlement reached is consistent with the plaintiff's fiduciary obligations to the class.  *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985).  The court also serves as guardian for the absent class

members who will be bound by the settlement, and therefore must independently determine the fairness of any settlement. *Id.* However, the court's role in intruding upon what is otherwise a private consensual agreement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. *FDIC v. Alshuler (In re Imperial Corp. of Am.)*, 92 F.3d 1503, 1506 n.5 (9th Cir. 1996). Therefore, the settlement hearing is not meant to be conducted as a trial or rehearsal for trial on the merits. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

In determining whether a proposed settlement is "fair, reasonable, and adequate" pursuant to Rule 23(e), courts may consider factors including (1) the strength of the case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the settlement amount; (5) the extent of discovery completed and the stage of the proceedings; (6) whether the class has been fairly and adequately represented during the settlement negotiations; and (7) the reaction of the class to the proposed settlement. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004) (citing *Chrysler Corp.*, 150 F.3d at 1026).

### a.        The Strength of Plaintiffs' Case

The initial fairness factor addresses Plaintiffs' likelihood of success on the merits and the range of possible recovery. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009). In determining the probability of the plaintiff's success on the merits, there is no "particular formula by which that outcome must be tested." *Id.* at 965. Instead, the court's assessment is based on "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (citation and quotation marks omitted). The court is not required to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of the outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* Rather, the court may presume that, through negotiation, the parties, their counsel, and the mediator arrived at a reasonable range of settlement by considering Plaintiffs' likelihood of recovery. *See Rodriguez*, 563 F.3d at 965

1  ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution

2  . . . ").

3      Plaintiffs acknowledge that there may have been "significant legal and factual hurdles that

4  otherwise may have prevented the Class from obtaining any recovery at all.  The outcome of class

5  certification, trial and any attendant appeals, were inherently uncertain." (*See* Doc. 38-1, 20:1-3; *see*

6  *also* Doc. 29, Young Decl. in Support of Preliminary Approval, ¶ 9.)  This uncertainty potentially

7  increased in light of the California Supreme Court's decision in *Brinker* which states that while it is

8  the employer's obligation to provide a meal break for the employee, "the employee thereafter [is] at

9  liberty to use the meal period for whatever purpose he or she desires, but the employer need not

10  ensure that no work is done."  *Brinker*, 53 Cal. 4th at 1017.  As noted above, *Brinker* was pending

11  during a substantial portion of the instant litigation and during the time the parties entered into their

12  Settlement Agreement.  (*See* Doc. 29, Young Decl. in Support of Preliminary Approval, ¶ 7

13  (establishing that the parties mediated the issue on reached a settlement on September 28, 2011

14  (*Brinker* was decided on April 12, 2012)).)  The fact that the law was uncertain was a factor in

15  Plaintiffs' assessing the risk and determining that settlement conferred a substantial benefit on the

16  Class.

17      Plaintiffs also considered the costs and risks associated with class certification and trial.  The

18  high risk, expense, and nature of a lengthy class action trial supported settlement at this stage of the

19  litigation.

20      Therefore, although Plaintiffs maintain their strong belief in the underlying merits of the case,

21  Class Counsel has acknowledged the weaknesses in the meal and rest break claims and has

22  considered the uncertainties surrounding proving the claims in a lengthy and complex jury trial in

23  negotiating the settlement amount.  As a result, Plaintiffs' likelihood of success appears to have been

24  properly accounted for in the settlement amount.  Accordingly, this factor weighs in favor of

25  approval.

26  ///

27  ///

28  ///

**b.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

The risk, expense, complexity, and likely duration of further litigation are factors that consider "the probable costs, in both time and money, of continued litigation." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D.Del. 2002).   Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted).   Moreover, settlement is encouraged in class actions where possible. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which present serious problems of management and expense.").

In this case, there remained significant procedural hurdles for the putative class to confront, including certification of the class.   Avoiding such unnecessary expenditures of resources and time benefits all the parties and the Court.   Moreover, there were significant risks in continued litigation and no guarantee of recovery given the current state of the law due to the pendency of *Brinker*, particularly as it related to the meal break claims.   The settlement, therefore, provides Class Members with another significant benefit that they would not receive if the case proceeded – certain and prompt relief. *See Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) ("It has been held proper to take the bird in hand instead of a prospective flock in the bush.").   This factor weighs in favor of approval.

**c.    The Risk of Maintaining Class Action Status Throughout the Trial**

A settlement in this case was reached prior to the Supreme Court's recent decision in *Brinker.* Given the recent decision by the California Supreme Court in that case, class certification for Plaintiffs' claim regarding missed meal breaks would be more difficult. *See Brinker*, 53 Cal. 4th at 1040 (holding employer is required to provide a meal period to employees, but "is not obligated to police meal breaks and ensure no work thereafter is performed").   On the other hand, the fact that one claim may not be amenable to class treatment does not necessarily affect the propriety of class

certification with respect to other claims of the class or necessarily impact the ability to maintain class-action status throughout trial. *See generally Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, 612 (S.D. Cal. 2010) (granting class certification and finding that "[t]he overtime, wage statement, and waiting time claims are suitable for class-wide treatment, but the meal and rest break and reimbursement claims aren't"). Because the Court is not aware of any risks to maintaining class-action status throughout trial, this factor is neutral. *See In re Veritas Software Corp. Sec. Litig.*, No. 03-0283, 2005 WL 3096079, at *5 (N.D. Cal. Nov. 15, 2005) (*vacated in part on other grounds*, 496 F.3d 962 (9th Cir. 2007)) (favoring neither approval nor disapproval of settlement where the court was "unaware of any risk involved in maintaining class action status"); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (finding that there were no facts that would defeat class treatment, the factor was considered "neutral" for purposes of final approval of class settlement).

### d.    The Settlement Amount

"[S]ettlement is about compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Warfarin*, 212 F.R.D. at 257-58. Class counsel negotiated a Settlement Amount of $2,500,000 payable to the class, without any reversion to Defendant. The Settlement also provides for (1) Class Representative Enhancement Awards of $7,000 each to the two named Plaintiffs; (2) a $10,000 payment to the California Labor and Workforce Development Agency ("LWDA") for PAGA penalties, of which $7,500 will be paid to the State of California and the remainder benefitting the Class; (3) an amount not to exceed $30,000 payable to the Claims Administrator; (4) a Class Counsel award of $825,000 (representing 33% of the Settlement Amount); and (5) legal costs in the amount of $30,000.

Although a larger award was theoretically possible, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal citations and quotation marks omitted). Moreover, the response of the Class has been positive. No objections have been filed and less than one percent of the Class opted out. (Doc. 38-3, Hamer Decl., ¶¶ 12-13.) In light of the claims at

issue in this case and the size of the proposed settlement class, the Settlement Amount appears fair and reasonable and this factor weighs in favor of final approval.

### e.  The Extent of Discovery Completed and the Stage of the Proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV*, 221 F.R.D. at 528.  What is required is that "sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently."  Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2012).  Here, Plaintiffs' counsel expended significant time and resources conducting formal discovery, including pre-complaint factual investigation, formal and informal written discovery, and the taking and defense of numerous depositions.  (Doc. 29, Young Decl. in Support of Preliminary Approval, ¶ 5.) Class counsel exchanged preliminary disclosures, declaration, and thousands of pages of documents, including company policies, compensation and time-keeping records, and conducted a day-long inspection of Defendant's Dinuba, California production facility.  (Doc. 29, Young Decl. in Support of Preliminary Approval, ¶ 5.)  Additionally, Plaintiffs' counsel conducted dozens of in-person interviews with Class Members and obtained 27 declarations.  (Doc. 29, Young Decl. in Support of Preliminary Approval, ¶ 6.)  The Court finds that sufficient discovery has been conducted, and this factor weighs in favor of approval.

### f.  Whether the Class has been Fairly and Adequately Represented During the Settlement Negotiations

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.  *See DIRECTV*, *Inc.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal quotation marks and citations omitted).  This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."  *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, the experience and view of Class Counsel weighs in favor of approving the Settlement. Class Counsel understood the complex risks and benefits of any settlement and concluded that the

proposed Settlement was a reasonable recovery that confers a substantial benefit on the Class Members.  (Doc. 29, Young Decl. in Support of Preliminary Approval, ¶ 6.)  Moreover, Class Counsel is experienced in this area of law and the settlement was reached after mediation conducted by an experienced wage-and-hour mediator.  This factor weighs in favor of approval.

### g.    The Reaction of the Class to the Proposed Settlement

Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable.  *DIRECTV, Inc.*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *see also Boyd v. Bechtel Corp*., 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding that objections from only 16 percent of the class was persuasive that the settlement was adequate).

Here, Class Notice was mailed to 2,055 Class Members and only 2 Class Members have opted out (less than one percent).  (Doc. 38-3, Hamer Decl., ¶¶ 12-13.)  Further, no objection to the Settlement Agreement was received, and no Class Member appeared at either final approval hearing to state any objection.  The response of the class was positive, and this weighs in favor of finding that the settlement is favorable to the Class Members.

### 4.    The Proposed Payment to the Claims Administrator is Reasonable

The $30,000 that Plaintiffs request be approved as payment to the Claims Administrator appears fair and reasonable.  The fee requested here comports with other Claims Administration fees in similar class-action settlements, particularly in light of the number of Notice Packets that the Claims Administrator was required to process. *See, e.g., Garcia v. Gordon Trucking*, No. 1:10-CV-0324-AWI-SKO, 2012 WL 5364575, at *3 (E.D. Cal. Oct. 31, 2012) (approving $25,000 administrator fee awarded in wage and hour case involving 1,868 potential class members); *Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *6 (N.D. Cal. Feb. 6, 2012) (awarding $250,000 in administration costs where claims administrator sent out 68,487 notices); *Vasquez*, 266 F.R.D. at 484 (approving $25,000 administrator fee awarded in wage and hour case

involving 177 potential class members).  The Court finds the requested Claims Administration fee is reasonable, and it shall be awarded.

### 5.   The Proposed PAGA Payment is Reasonable

A settlement reached between the parties on a PAGA claim is subject to court review and approval. Cal. Lab. Code § 2699(l).  Pursuant to the Settlement Agreement, Defendant has agreed to pay $10,000 as civil penalties pursuant to the PAGA, codified at California Labor Code §§ 2699, *et seq.*  Of the $10,000, 75 percent ($7,500) will be paid to the State of California, and the remainder ($2,500) will benefit the class. *See* Cal. Lab. Code § 2699(I) (mandating 75/25 division of recovered PAGA civil penalties between to the California Labor and Workforce Development Agency ("LWDA") and aggrieved employees).  This total amount comports with settlement approval of PAGA awards in other cases. *See, e.g., Garcia*, 2012 WL 5364575, at *3 (approving PAGA settlement payment of $10,000 out of the $3.7 million common-fund settlement); *Chu v. Wells Fargo Investments, LLC*, No. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at * 1 (N.D. Cal. Feb. 16, 2011) (approving PAGA settlement payment of $7,500 to the LWDA out of $6.9 million common-fund settlement).  The Court finds that the PAGA payment is set at a reasonable amount, and it shall be approved.

### 6.   Conclusion

In sum, as set forth above, the relevant factors weigh in favor of approving the parties' Settlement Agreement.  It represents a substantial recovery that avoids the risks associated with protracted litigation in a document-intensive wage-and-hour case.   The parties' Settlement Agreement is found to be fair and reasonable and is hereby APPROVED.

## B.   Plaintiffs' Request for Attorneys' Fees is Approved

The parties' Settlement Agreement provides "Defendant agrees to pay Class Counsel's attorneys' fees in the amount of $825,000 (33% of the Maximum Settlement Amount) and costs of not more than $30,000 from the Maximum Settlement Amount as approved by the Court." (Doc. 29-1, ¶16.)

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the

parties' agreement." Fed. R. Civ. P. 23(h).  Courts have recognized the "common fund" or "common benefit" doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs to be paid out of the fund.  *See Chrysler Corp.*, 150 F.3d at 1029.  "[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Staton*, 327 F.3d at 972 (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).  Awarding a percentage of the common fund is particularly appropriate "when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id.* (quoting *Van Gemert*, 444 U.S. at 478-79) (internal quotation marks omitted).

Here, where the Settlement applies a distribution formula pursuant to which each Class Member whose Notice is not returned as undeliverable will receive a mathematically ascertainable payment, application of the percentage of common fund doctrine is appropriate.  The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage.  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).  The exact percentage awarded, however, varies depending on the facts of the case, and "in most common fund cases, the award exceeds the benchmark" percentage.  *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *3 (N.D. Cal. 2009); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%").

The attorneys' fees here will be awarded pursuant to federal law since the case is based on federal question under the FLSA.  Federal courts utilize the percentage-of-the-fund approach, and use the lodestar as a "cross-check" on reasonableness of the percentage.  As such, calculation of the lodestar amount may be used as a cross-check to assess the reasonableness of the percentage award. *See Garcia*, 2012 WL  5364575, at *8; *Bond v. Ferguson Enterprises, Inc.*, No. 1:09-CV-1662 OWW MJS, No. CV 06–04149 MMM (Shx), 2011 WL 2648879 (E.D. Cal. June 30, 2011)[5];

---

[5] The version of the court's order in *Bond* that is published electronically on Westlaw contains a formatting error such that the entire text of the order does not appear on the electronic Westlaw publication.  The complete order is located on the court's electronic docket at number 59 in case 1:09-cv-01662-OWW-MSJ.

1  *Fernandez v. Victoria Secret Stores*, No. CV 06–04149 MMM (Shx), 2008 WL 8150856 (C.D. Cal.

2  July 21, 2008); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002).

3  **1.  The Percentage Requested in Fair and Reasonable**

4  In assessing whether the percentage requested is fair and reasonable, courts generally

5  consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill

6  required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial

7  burden; and (6) the awards made in similar cases. *Vizcaino*, 290 F.3d at 1047; *Six Mexican Workers*

8  *v. Az. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990).

9  **a.  The Results Achieved**

10  The individual claims in this case concern Defendant's alleged failure to pay overtime and

11  to pay class members for meal and rest breaks.  These types of claims would not generally produce

12  substantial individual damage awards.  As such, the recovery of $2,500,000 is a favorable result,

13  particularly in light of *Brinker* and the uncertainty as to the viability of the meal and rest break

14  claims.  Overall, the Court finds that the results achieved are good, which is highlighted by the fact

15  that there was no objection to the settlement amount or to the attorneys' fees requested.  *See*

16  *DIRECTV*, 221 F.R.D. at 529.

17  **b.  The Risks Involved**

18  There were significant risks involved in this litigation.  Specifically, some of the central

19  claims involved the timely provision of rest and meal periods, an issue that was pending before the

20  California Supreme Court during the time the parties were litigating the case and negotiating a

21  settlement.  At the time of settlement, it was possible that any resulting decision could significantly

22  lower the potential recovery in this case.  Further, the action was taken on a contingency fee basis

23  and, as such, Class Counsel invested time, effort, and money with no guarantee of recovery.  There

24  were also legal and factual hurdles that may have prevented the Class from obtaining any recovery.

25  In cases where recovery is uncertain, an award of one-third of the common fund as attorneys' fees

26  has been found to be appropriate. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir.

27  2000); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *19, n. 14 (C.D. Cal.

28

June 10, 2005) (discussing Ninth Circuit cases awarded attorney fees of one-third of the total recovery).

### c.     Skill Required and Quality of the Work Performed

The case required specialist skills to litigate the legal theories relating to wage and hour law and labor law at issue in the case.  Class Counsel are experienced class litigators, including in the area of employment class litigation.

Moreover, this case was actively litigated and significant time was spent on discovery.  *See generally Navarro v. Servisair*, No. C 08-02716 MHP, 2010 WL 1729538, at *3 (N.D. Cal. Apr. 27, 2010) (finding proposed award of 30 percent of settlement fund unjustifiably departed from benchmark due in part to speed with which parties reached a settlement).  Overall, the specialized skill of Class Counsel in this area of the law was generally an asset to the Class Members and the quality of work performed was good.

### d.     The Contingent Nature of the Representation

Class Counsel litigated the case on a contingency fee basis, which necessarily presented considerable risk.  *See In re Sumitomo Copper Litig*., 74 F. Supp. 2d 393, 396-98 (S.D.N.Y. 1999) ("No one expects a lawyer whose compensation is contingent on the success of his services to charge, when successful, as little as he would charge a client who in advance of the litigation has agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee dependent solely on the reasonable amount of time expended.").  Class Counsel contends that they assumed a very real risk in taking this case on a continency basis, investing time, effort, and money in the action with no guarantee of recovery.  (Doc. 38-1, 28:13-16.)

In considering both the contingent nature of the work performed by Class Counsel as well as the risk involved in the costs advanced, these factors support the fee award requested.  *See Graham v. Daimler Chrysler Corp*., 34 Cal. 4th 553, 580 (2004) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed.  The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.") (internal citations omitted).

e.      **Awards Made in Similar Cases**

Finally, the percentage award requested in this case is commensurate to percentage-of-the-benefit awards made in other wage-and-hour actions in this district:

(1)     *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) (court approving attorneys' fees in the amount of 33 percent of the common fund);

(2)     *Bond v. Ferguson Enterprises, Inc.*, No. 1:09-cv-01662-OWW-MJS, Docket No. 59 (E.D. Cal. June 30, 2011) (court approved attorneys' fees in the amount of 30 percent of the common fund)*;*

(3)     *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482 (E.D. Cal. 2010) (wage-and-hour action putative class-action settlement where court approved award of attorneys' fees in the amount of 33.3 percent of the common fund);

(4)      *Benitez v. Wilbur,* No. 1:08-cv-01122 LJO GSA, Doc. No. 52 (E.D. Cal., Dec. 15, 2009) (awarding 33.3 percent of the benefit to the class in attorneys' fees);

(5)     *Chavez v. Petrissans*, (Case No. 1:08-cv-00122 LJO GSA, Doc. No. 89 (E.D. Cal. Dec. 15, 2009) (court approved awards of attorneys' fees of 33.3 percent of the common fund);

(6)     *Romero v. Producers Dairy Foods, Inc.*, No. 1:05-cv-0484-DLB, 2007 WL 3492841, at * 4 (E.D. Cal. Nov. 14, 2007) (class-action settlement where court approved attorneys' fees in the amount of 33 percent of common fund);

(7)     *Vasquez v. Jim Aartman, Inc.*, No. 1:02-cv-05624-AWI-LJO, Doc. No. 130 (class-action settlement where court approved attorneys' fees in the amount of 30 percent of the settlement amount);

(8)     *Baganha v. Cal. Milk Transport*, No. 1:01-cv-05729-AWI-LJO, Doc. No. 147 (class-action settlement where court approved attorneys' fees in the amount of 31.25 percent of settlement amount); and

(9)     *Randall Willis et al. v. Cal. Western Transport* and *Earl Baron et al. v. Cal Western Transport* (consolidated cases), No. 1:00-cv-05695-AWI-LJO (court approved attorneys' fees in the amount of 33.3 percent of the settlement amount).

The Settlement Agreement's provision of $825,000 in attorneys' fees (33 percent of the total settlement amount), is fair and reasonable in light of the awards of attorneys' fees in similar wage-and-hour cases in this district.

### f.     Conclusion

Further, although Class Counsel's requested fees exceed the 25 percent benchmark under federal law, the Court finds sufficient reasons to exceed that marker considering the risk of the litigation, the contingent nature of the work, the favorable reaction of the class, and the fee awards in other wage-and-hour cases.  As such, the requested 33 percent of the class recovery represents a reasonable fee award and is approved.  *See Ozga v. U.S. Remodelers, Inc.*, No. C 09-05112 JSW, 2010 WL 3186971, at * 3 (N.D. Cal. Aug. 9, 2010) (departure from benchmark warranted due to excellent results, reaction of the class, the risks faced due to the uncertainty of California law in similar wage-and-hour cases).

### 2.     Lodestar Cross-Check

Courts frequently cross-check a percentage fee request with the lodestar analysis.  *See, e.g., Vizcaino,* 290 F.3d at 1050 (finding that "the lodestar may provide a useful perspective on the reasonableness of a given percentage award"); *Bond*, 2011 WL 2648879, at *11 (finding that "[c]alculation of the lodestar amount may be used as a cross-check to assess the reasonableness of the percentage award").

"In conducting a lodestar cross-check, the court must first determine the dollar value of the proposed percentage-based fee award." *In re Portal Software, Inc. Sec. Litig.* ("*Portal Software*"), No. C-03-5138-VRW, 2007 WL 4171201, at *14 (N.D. Cal. Nov. 26, 2007).  The requested award here is $825,000.00, which represents a requested fee of 33 percent of the $2,500,000 Settlement Amount.  The next step is to cross-check the proposed percentage fee against the lodestar.  *Id.* "Three figures are salient in a lodestar calculation: (1) counsel's reasonable hours, (2) counsel's

reasonable hourly rate and (3) a multiplier thought to compensate for various factors (including unusual skill or experience of counsel, or the ex ante risk of nonrecovery in the litigation)." *In re HPL Tech., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 919 (N.D. Cal. 2005). The multiplier is calculated from the ratio of the proposed percentage fee to the computed lodestar fee and is assessed for reasonableness. *Portal Software*, 2007 WL 4171201, at *14. Where the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting."); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) ("Although counsel have not provided a detailed cataloging of hours spent, the Court finds the information provided to be sufficient for purposes of lodestar cross-check.").

### a.   Plaintiffs' Asserted Lodestar

The fees requested by Plaintiffs under the percentage of the common fund exceed Class Counsel's asserted lodestar of $704,568.50. (Doc. 51, 6:18-14:25.)  However, the fact that the lodestar amount is less than the requested fee amount of $825,000 does not necessarily indicate that Class Counsel's request for attorneys' fees should be reduced. "[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *Vizcaino*, 290 F.3d at 1051; *see also Bond*, 2011 WL 2648879, at *16 (applying a risk modifier of 1.82 to the lodestar amount for the lodestar cross check). Based on the information provided in Plaintiffs' supplemental submission, Plaintiffs are requesting a lodestar multiplier of approximately 1.17. (*See* Doc. 38-1, 29:18-22 for total amount of attorneys' fees and hours worked.)

By declaration, Class Counsel indicates the following rates, hours, and fees of each attorney who performed work on the litigation:

| Schedule of Fees | | | | |
|---|---|---|---|---|
| **Attorney** | **Title** | **Hourly Rate** | **Hours Worked** | **Total Fees** |
| Jennifer Crewz | Legal Assistant | $175 | 6.7 | $1,172.50 |
| Elena M. DiBattista | Legal Assistant | $185 | 3.4 | $629.00 |

27

| | | | | |
|---|---|---|---|---|
| Philip A. Downey | Principal/Owner | $550 | 501.9 | $276,045.00 |
| Betsy Ferling-Hitriz | Legal Assistant | $185 | 15.1 | $2,793.50 |
| Brandon Lauria | Associate | $450 | 21.9 | $9,855.00 |
| Karen Leser-Grenon | Associate | $450 | 94.1 | $42,345.00 |
| Rose F. Luzon | Associate | $450 | 195.1 | $87,795.00 |
| James E. Miller | Principal/Partner | $725 | 93.1 | $67,497.5 |
| Sue Moss | Legal Assistant | $185 | 4.9 | $906.50 |
| Chiharu Sekino | Legal Assistant/ Law Clerk | $185 | 13.2 | $2,442.00 |
| James C. Shah | Principal/Partner | $700 | 3.6 | $2,520.00 |
| Debbie Tutler | Legal Assistant | $175 | 21.8 | $3,815.00 |
| Itza Vilaboy | Legal Assistant | $175 | 45.8 | $8,015.00 |
| Lesley Weaver | Director | $600 | 141.7 | $85,020.00 |
| Eric L. Young | Principal/Partner | $625 | 171.3 | $107,062.50 |
| Nathan Zipperian | Partner | $550 | 12.1 | $6,655.00 |
| Total | | | 1,345.7 | **$704,568.50** |

(Doc. 51, 6:18-14:25; Docs. 51-3, 51-4, 51-5.)[6]

### b.   Hours Reasonably Expended

The Court finds the 1,345.7 hours expended on the litigation to be reasonable in light of the legal issues and the amount of discovery conducted, the number of Defendant's employees included in the Settlement Classes, the mediation preparation required, and motion practice with respect to the Settlement Agreement.  The total number of hours expended in this action is commensurate with similar wage and hour class actions in this district. *See Garcia*, 2012 WL 5364575, at *8 (approving 2,384.73 hours expended in reaching a settlement for 1,869 class members after "extensive" law and motion work, including dispositive motions); *Bond*, 2011 WL 2648879, at *12-*13 (reducing the number of hours requested from 1,929.94 by a 30 percent "haircut" (to 1,350.96) for a settlement of 553 class members after finding that the initial amount sought was not justified).  While the law and

---

[6] The total hours and amount indicated in the Schedule of Fees table includes all work performed, including additional hours incurred in connection with the Supplemental Submission.  (*See* Doc. 51.)

1   motion work in this action was not as extensive as in *Garcia*, the amount of hours billed is

2   significantly less than the amount approved in *Garcia* and instead matches the amount ultimately

3   approved in *Bond*, which included discovery involving significantly fewer class members than in this

4   action.  The Court thus finds no reason to reduce the number of hours set forth in counsel's lodestar

5   calculations.

6              **c.**    **Reasonable Hourly Rates**

7        Class counsel has submitted documentation of the hourly rates billed in this matter.  The rates

8   range from $175 to $185 for legal assistants, $450 for associates, and $550 to $725 for principals

9   and partners.  (Doc. 51, 6:18-14:25.)  As recent cases have indicated, prevailing rates in the Eastern

10   District of California are in the $400 range, with rates of up to $650 to $675 approved for partners

11   and senior associates with significant years of experience.  *See Garcia*, 2012 WL 5364575, at *9,

12   *Bond*, 2011 WL 2648879, at *11-13.  Although Plaintiffs contend that the requested rates are "within

13   the range" and "consistent" with those approved in *Bond*, they concede that some of the rates are

14   "greater than the hourly rate approved in *Bond*."  (Doc. 51, 14-22.)

15        In *Bond*, the court noted that "[b]ecause the lodestar is being used here as a cross-check, the

16   court may use a 'rough calculation of the lodestar.'"  *Bond*, 2011 WL 2648879, at *12 (citing

17   *Fernandez*, 2008 WL 8150856, at *9.  The court in *Bond* determined that it was "appropriate to

18   roughly haircut the lodestar" by 10 percent to bring the requested hourly rates to within those

19   prevalent within the Eastern District.  Thus, for example, a requested hourly rate of $750 for a

20   partner with more than 20 years of experience was adjusted to $675 per hour.  A requested hourly

21   rate of $290 for an associate with two years of experience was adjusted to $261 per hour.

22   Additionally, the court found that the appropriate rate for legal assistants was $100 per hour.

23   Similarly, in *Garcia*, while the court did not reduce the requested rates, the maximum rate approved

24   was $650 per hour, and many of the rates were billed at $125 to $400 per hour.  *See Garcia*, 2012

25   WL 5364575, at *9.

26        Here, the hourly rates requested by Class Counsel are similar to those requested in *Bond* and

27   are subject to a 10 percent "haircut" to account for the rates in the relevant community.  Further,

28

based upon the rate approved in *Bond*, the rate for legal assistants will be reduced to $100 per hour. This adjustment is as follows:

| Adjusted Schedule of Fees | | | | | |
|---|---|---|---|---|---|
| Attorney | Title | Hourly Rate | Adjusted Hourly Rate | Hours Worked | Total Fees |
| Jennifer Crewz | Legal Assistant | $175 | $100 | 6.7 | $670.00 |
| Elena M. DiBattista | Legal Assistant | $185 | $100 | 3.4 | $340.00 |
| Philip A. Downey | Principal/Owner | $550 | $495 | 501.9 | $248,440.50 |
| Betsy Ferling-Hitriz | Legal Assistant | $185 | $100 | 15.1 | $1,510.00 |
| Brandon Lauria | Associate | $450 | $405 | 21.9 | $8,869.50 |
| Karen Leser-Grenon | Associate | $450 | $405 | 94.1 | $38,110.50 |
| Rose F. Luzon | Associate | $450 | $405 | 195.1 | $79,015.50 |
| James E. Miller | Principal/Partner | $725 | $652.50 | 93.1 | $60,747.75 |
| Sue Moss | Legal Assistant | $185 | $100 | 4.9 | $490.00 |
| Chiharu Sekino | Legal Assistant/ Law Clerk | $185 | $166.50 | 13.2 | $2,197.80 |
| James C. Shah | Principal/Partner | $700 | $630 | 3.6 | $2,268.00 |
| Debbie Tutler | Legal Assistant | $175 | $100 | 21.8 | $2,180.00 |
| Itza Vilaboy | Legal Assistant | $175 | $100 | 45.8 | $4,580 |
| Lesley Weaver | Director | $600 | $540 | 141.7 | $76,518.00 |
| Eric L. Young | Principal/Partner | $625 | $562.50 | 171.3 | $96,356.25 |
| Nathan Zipperian | Partner | $550 | $495 | 12.1 | $5,989.50 |
| Total | | | | 1,345.7 | **$628,283.30** |

The adjusted attorney hourly rates range from $405 to 652.50 per hour and account for the respective attorney's experience and position within Class Counsel firms.  This comports generally with the range of rates awarded in *Bond* and *Garcia*.  The lodestar, after adjustments, is $628,283.30.

### d.    Lodestar Multipler

The amount of $825,000 requested by Class Counsel is greater than the amount of $628,283.30.  However, adjustments to increase or decrease the lodestar amount are sometimes

appropriate and justify the use of a "lodestar multiplier." *Clark v. City of Los Angeles*, 803 F.2d 987, 991 (9th Cir. 1986); *see also Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002). "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Fischel*, 307 F.3d at 1008 (citing *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)). Generally, a district court has discretion to apply a multiplier to the attorney's fees calculation to compensate for the risk of nonpayment. *Fischel*, 307 F.3d at 1008; *see also In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig. v. Exxon Corp.*, 109 F.3d 602, 609 (9th Cir.1997); *Bond*, 2011 WL 2648879, at *13.

The "lodestar multiplier" is calculated by dividing the percentage fee award by the lodestar calculation. *Fischel*, 307 F.3d at 1008. Here, a multiplier of 1.31 is calculated by dividing $825,000.00 by $628,283.30. To determine whether the lodestar multiplier is reasonable the following factors may be considered: (1) the amount involved and the results obtained, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.* at 1007, n. 7 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975)); *see also Bond*, 2011 WL 2648879, at *13.[7]

Here, Class Counsel undertook considerable financial risks in this litigation by accepting this case on a contingency basis. There was no guarantee they would recoup their fees or the substantial costs advanced. The contingent nature of the representation has also resulted in Class Counsel litigating this matter approximately two years at this point without any compensation. As a consequence, Class Counsel was unable to take on cases they would have otherwise taken.

---

[7] Only the *Kerr* factors that are not already subsumed within the lodestar are considered. *See Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1046-47 (9th Cir. 2000).

Additionally, the percentage award requested in this case is commensurate with the percentage-of-the-benefit awards made in other wage and hour actions in this District, many of which included a lodestar multiplier. *See, e.g.*, *Garcia*, 2012 WL 5364575, at *8-*10 (33%); *Bond*, 2011 WL 2648879, at *9-*14 (30%); *see also Schiller v. David's Bridal, Inc.*, No. 1:10-CV-00616-AWI-SKO, 2012 WL 2117001, at *16-*23 (E.D. Cal. June 11, 2012) (33.3%); *Benitez*, 1:08–CV–1122 LJO GSA (E.D. Cal. Dec. 15, 2009) (33.3%); *Chavez*, 1:08–CV–00122 LJO–GSA (E.D.Cal. Dec. 15, 2009) (33.3%).

Based on the overall success, the absence of opposition, and Class Counsel's well-documented hours worked in this action, Plaintiffs' request for a multiplier of 1.31 of its lodestar is reasonable. *See, e.g. Vizcaino*., 290 F.3d 1043, 1051 (finding no abuse of discretion in awarding a multiplier of 3.65); *see also Garcia*, 2012 WL 5364575, at *9 (approving a multiplier of 1.28); *Bond*, 2011 WL 2648879, at *13-*14 (approving a multiplier of 1.75). According, the Court approves the request for attorneys' fees in the total amount of $825,000.

## C.   Plaintiffs' Request for Costs is Granted

The Court further finds that Plaintiffs' request for $30,000 in costs is reasonable. The declarations of Class Counsel detail the costs incurred (*See* Docs. 51-3, 51-4, 51-5), which include travel costs, mediation fees, expert fees, copy and scanning costs, filing fees, and electronic research fees. These types of fees are routinely reimbursed. *See, e.g., Vasquez*, 266 F.R.D. at 493. Here, the actual costs incurred are greater than the agreed-upon amount of $30,000. As such, Plaintiffs' request of costs in the amount of $30,000 is reasonable and is approved.

## D.   Plaintiffs' Motion for Enhancement Awards to the Class Representatives is Granted

Pursuant to the Settlement Agreement, Plaintiffs seek an enhancement in the amount of $7,000 to the named Plaintiffs Franco and Castro. This payment is intended to recognize the time and efforts that the named Plaintiffs spent on behalf of the Class Members.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Company*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (internal quotations and citations omitted). In *Ingram,* the Court approved service awards of $300,000 to each named plaintiff in

recognition of the services they provided to the class by responding to discovery, participating in the mediation process, and taking the risk of stepping forward on behalf of the class. *Id.*; see *also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving $50,000 participation award to plaintiffs); *Glass v. UBS Financial Services, Inc.*, No. C-06-4068-MMC, 2007 WL 221862, at *17 (N.D. Cal. Jan. 26, 2007) (approving $25,000 enhancement to each named plaintiff).

Here, the named Plaintiffs assisted Class Counsel by (1) bringing this case to Class Counsel's attention; (2) searching for key documents; (3) meeting regularly with Class Counsel to provide information and answer questions about their work experience and documents; (4) assisting with the preparation of the original and amended complaints; (5) preparing for and attending a lengthy deposition; (6) reviewing the settlement terms; and (7) reviewing and executing a general release of claims. (Doc. 51, 3:1-6; *see also* Docs. 51-1 (Franco Decl.), 51-2 (Castro Decl.).) Further, Plaintiff Franco organized meetings between Class Counsel and current and former employees of Defendant, resulting in multiple declarations that assisted Class Counsel in litigating and resolving the case. (Doc. 51, 3:7-9, Doc. 51-1 (Franco Decl.), ¶ 9.) Plaintiffs also bore significant personal risk, as Defendant is located in a small community and Plaintiffs are recent migrants with limited education and job prospects, who believed that serving as named Plaintiffs may cause future employers to be reluctant to hire them. (Doc. 51-1 (Franco Decl.), ¶ 13; Doc. 51-2 (Castro Decl.), ¶ 13.) The Court therefore finds that incentive awards requested in the amount of $7,000 are reasonable.

## V.   CONCLUSION AND ORDER

Based on consideration of the memorandums, declarations, and exhibits filed in support of the present motions, IT IS HEREBY ORDERED that:

1.   The Motion for Final Approval of the Class Action Settlement is GRANTED, subject to the following findings and orders:

   a.   Unless defined herein, all defined terms in this Order shall have the respective meanings as the same terms in the Stipulation of Settlement;

   b.   Pursuant to Federal Rule of Civil Procedure 23(b)(3) and the Fair Labor Standards Act, and for settlement purposes only, the Court certifies the

proposed Settlement Class, consisting of all persons currently or formerly employed as non-exempt production line employees at the Ruiz Foods processing facility in Dinuba, California, between December 15, 2006, and February 10, 2012, the date of the Court's Order granting preliminary approval of the Settlement;

c.     For settlement purposes only, Settlement Class Counsel are:

> Eric L. Young, Esq.
> Egan Young, Attorneys at Law
> 526 Township Line Road, Suite 100
> Blue Bell, PA 19422
>
> Rose F. Luzon, Esq.
> Shepherd, Finkelman, Miller & Shah, LLP
> 401 West A Street, Suite 2350
> San Diego, CA 92101
>
> Philip A. Downey, Esq.
> The Downey Law Firm, LLC
> P.O. Box 1021
> Unionville, PA 19375;

d.     Heffler, Radetich & Saitta, LLP, is approved as the Settlement Administrator;

e.     The Court has conducted a preliminary and final evaluation of the Settlement as set forth in the Parties' Stipulation of Settlement to assess its fairness, adequacy, and reasonableness.  Based on these evaluations, the Court finds that the Settlement, negotiated at arms' length by the Parties, is fair, reasonable, and adequate;

f.     On March 28, 2012, in accordance with the Court's Order granting preliminary approval of the Settlement, the Court-approved Class Notice, in both the English and Spanish language, was provided via U.S. first-class mail to 2,055 Class Members.  Class Notices returned as undeliverable with forwarding addresses were promptly re-mailed to Class Members, while Class Notices that were returned as undeliverable without a forwarding address were further researched and address traces were performed.  For updated addresses obtained by way of the address traces, Class Notices were

promptly mailed to the new addresses.  Consistent with the Stipulation of Settlement, no further processing was performed for those Class Notices that were returned as undeliverable.  The Court finds that the plan for giving notice, in form, method, and content, as well as the execution of giving such notice by the Parties and Settlement Administrator, has fully complied with the requirements of Rule 23, due process, and this Court's Order granting preliminary approval.  In response to the Class Notice, only two Class Members excluded themselves from the Settlement, no Class Members objected to the Settlement terms, and no Class Members disputed the number of weeks worked or the approximate Settlement Award noted in the Class Notice;

g.   Based upon the Court's preliminary and final evaluations, the Court hereby GRANTS final approval of the Settlement;

h.   Settlement Award checks will be mailed to Class Members within 45 days after the Settlement becomes final and effective under the Stipulation of Settlement, or in the event an appeal is filed, on the day after the appeal is dismissed or withdrawn, or the appeal is decided upholding propriety of the Settlement (unless Defendant requests and Class Counsel agrees to additional time, which agreement will not be unreasonably withheld). The two individuals who opted out of the Settlement, identified as Nancy O. Zapata and Guadalupe R. Carbajal, are hereby excluded from the Class and shall not be bound by the terms of this Settlement;

I.   All Settlement Award checks issued to Class Members shall contain, on the back of the check, the following language, which shall be the opt-in consent required by the FLSA: "By endorsing this check, I consent to join the Class in *Franco, et. al. v. Ruiz Food Products, Inc*., elect to participate in the Settlement, and agree to release all of my claims that are covered by the Settlement." Class Members must only cash one Settlement Award check to

opt-in to the Class. Any checks that are not cashed will be paid by Defendant to Ruiz-4-Kids and the Chicana Latina Foundation. Declarations from the Settlement Administrator of proof of payments, and a list of all persons who have cashed a Settlement Award check, will be filed with the Court 120 calendar days after Settlement Award checks are issued. Such declarations shall be provided to Class Counsel and Defendant's Counsel;

j.    As provided in the "RELEASED CLAIMS" section of the Stipulation of Settlement, each member of the Settlement Class, except for the two individuals who opted out of the Settlement, fully releases and discharges Defendant as set forth *infra* in Section III(C) and in the Settlement Agreement at Doc. 29-1. Each such Settlement Class member shall not be entitled to pursue, accept or recover damages for any Released Claims against the Released Parties arising between December 15, 2006, and the date of this Order. Notwithstanding this Release of Claims, waivers of claims expressly under the FLSA shall only be binding on Settlement Class members who opted-in as provided above;

k.    The Court approves the selection of Ruiz-4-Kids and the Chicana Latina Foundation as the *cy pres* beneficiaries. The Claims Administrator shall donate to these beneficiaries according to the conditions set out in the Settlement Agreement;

l.    The Court approves an award of $10,000 pursuant to the California Labor Code sections 2698, et seq., the California Labor Code Private Attorneys General Act of 2004 ("PAGA"), with payment of $7,500 to the California Labor and Workforce Development Agency ("LWDA") for the release of Class Members' PAGA claims, and the balance of $2,500 to be applied to the benefit of the Class;

m.    The Court awards Class Representative Enhancements of $7,000 each to Patricia Franco and Lilia Castro. The Court finds that this amount is fair and

reasonable in light of Plaintiffs' contributions to the litigation, for the notoriety and risk of serving as representatives for the class, and for providing Defendant a general release of claims;

n.   The Court hereby awards attorneys' fees in the amount $825,000 and costs in the amount of $30,000 to Class Counsel;

o.   The Court approves claims administration expenses in the amount of $30,000 payable to the Settlement Administrator, Heffler, Radetich & Saitta, LLP;

2.   The Court retains jurisdiction over the parties to enforce the terms of the Order and Judgment, and shall have continuing jurisdiction over the construction, interpretation, implementation, and enforcement of the Settlement Agreement in accordance with its terms;

3.   As indicated above, within one hundred and twenty (120) days of the date of the order, the Settlement Administrator shall provide declarations to the Court, Class Counsel, and Defendant's Counsel of proof of payments and a list of all persons who have cashed a Settlement Award check; and

4.   After the declarations from the Settlement Administrator have been filed and within one hundred and eighty (180) days of the date of this Order, the parties shall file a proposed Final Judgment and Dismissal with Prejudice for entry by the Court.

IT IS SO ORDERED.

**Dated:   November 27, 2012**          _____/s/ Sheila K. Oberto_____
                                            UNITED STATES MAGISTRATE JUDGE